## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     *Plaintiff,*

    v.

                                   Civ. No. 13-1147

5934 KING TRAIL,
CORPUS CHRISTI, TEXAS 78414

MORE PARTICULARLY DESCRIBED AS:
LOT FIVE (5), BLOCK EIGHT (8), KING ESTATES UNIT 2,
A SUBDIVISION OF THE CITY OF CORPUS CHRISTI, NUECES
COUNTY, TEXAS, AS SHOWN BY THE MAP OR PLAT THEREOF
RECORDED IN VOLUME 57, PAGES 106, 107 AND 108, MAP
RECORDS OF NUECES COUNTY, TEXAS,

     *Defendant,*

*and*

PERSONAL REPRESENTATIVE OF THE ESTATE OF ARMANDO G. GUTIERREZ,
DORA GUTIERREZ A/K/A DORA GARCIA,
TAX ASSESSOR OF NUECES COUNTY, TEXAS,

     *Claimants.*

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff states:

### JURISDICTION AND VENUE

1.    This is a civil action *in rem* for forfeiture of Defendant property which has been located and will be arrested by execution of a Warrant for Arrest in the District of Texas; and during the pendency of this action Defendant, or its equivalent or proceeds thereof, will be subject to the jurisdiction of this Court.

2.    The United States District Court for the District of New Mexico has exclusive, original jurisdiction under 28 U.S.C. §§ 1345, 1355 and 1356.

3.      Venue is proper under 28 U.S.C. §§ 1355 and 1395.

4.      The "res" or property which is the subject of this action consists of the real property (hereafter collectively referred to as "Defendant Real Property") in the above caption.

## PARTIES AND CLAIMANTS

5.      The following persons may claim an interest in Defendant Real Property:

(a).    Personal Representative of the Estate of Armando G. Gutierrez;

(b).    Dora Gutierrez a/k/a Dora Garcia;

(c).    Tax assessor of Nueces County, Texas.

## FACTS

6.      In 2002, the U.S. Congress passed the Help America Vote Act (HAVA) to educate voters about the electoral process and increase voter registration.  States received federal funding under HAVA to meet the new standards for election administration and voting systems.

7.      The New Mexico Secretary of State (NM SoS) administered almost $20 million of HAVA funds from April 1, 2003, through December 31, 2006, through at least five contracts implementing various requirements of the HAVA.

8.      The NM SoS advertised a Request for Proposals (RFP) for one such contract of HAVA funds on August 8, 2004.  The proposed contract was for voting-related advertising. ARMANDO G. GUTIERREZ owned A. Gutierrez and Associates, Inc. (AGA), and submitted a response to the RFP on behalf of AGA on August 20, 2004.

9.      GUTIERREZ stated in his response to the RFP that AGA would comply with the RFP by charging $75 per hour for its services and by billing on a net cost basis.  That is, AGA was permitted to bill only the actual costs it incurred while performing its obligations under the contract.  The AGA RFP response also confirmed that AGA was "self-contained," i.e., there

2

would be no need for subcontractors, but if any subcontractors were needed, the NM SoS would approve their hiring in advance and in writing.

10.     AGA was selected on August 24, 2004, and GUTIERREZ signed the contract on August 31, 2004. The contract became effective on September 9, 2004, after receiving the required approval from the New Mexico Department of Finance and Administration (DFA).

11.     According to its terms, the contract was to terminate on December 30, 2006, and was not to exceed $4 million, plus New Mexico gross receipts tax. The contract terms, *inter alia*:

A.     Required the NM SoS to approve subcontractors in writing before final selection;

B.     Required compliance with the RFP and with AGA's response to the RFP, which included a $75 hourly rate for AGA's services and reimbursement of AGA for the net costs that AGA actually expended;

C.     Required AGA to transmit a detailed and certified statement of services, time, and charges to the NM SoS within thirty days after the end of the month during which the services were performed;

D.     Required AGA to justify its expenses with receipts, and to maintain said receipts for three years thereafter;

E.     Allowed the NM SoS to recover excessive or illegal payments; and

F.     Embodied the entire agreement between the parties as of the effective date of the contract, September 9, 2004.

12.     The contract was amended twice, through a first amendment titled "Amendment 1" for an additional $1,762,000 that excluded New Mexico gross receipts tax, and a second

amendment titled "Amendment 2" for an additional $186,750 that included New Mexico gross receipts tax.

  A. Amendment 1 was retained in the files of the NM SoS office, labeled as an amendment, and printed on NM SoS letterhead.

  B. Amendment 1 was properly submitted to and approved by DFA. The final signature on Amendment 1 was by the DFA on May 18, 2006.

  C. Amendment 2 was retained in the files of the NM SoS office, labeled as an amendment, and printed on NM SoS letterhead.

  D. Amendment 2 was properly submitted to and approved by DFA. The final signature on Amendment 2 was by the DFA on October 6, 2006.

13. From September 2004 through October 2006, AGA invoiced and received a total of approximately $6,271,810 of federal HAVA funds from the State of New Mexico. Under the terms of the contract, a portion of the total amount was for reimbursement of gross receipts taxes AGA was required to pay to the State. After subtracting monies allotted for payment of New Mexico gross receipts taxes, the contract amount should have been approximately $5,886,144. This amount should have included services that AGA had provided to the State of New Mexico, plus the net costs AGA had incurred. But, the documentation of AGA's services provided and costs incurred support a contract amount of only $3,385,661. Therefore, AGA received an excessive payment of at least $2,500,483.

14. None of the AGA employees mentioned in AGA's response to the RFP actually performed work on AGA's HAVA contract.

15. AGA billed the NM SoS gross media prices rather than the net costs that AGA actually paid and that the contract required AGA to bill.

16.     AGA billed the State of New Mexico for its services far in excess of the amount that AGA was permitted to bill under the terms of the $75 per hour flat rate contract. For example, had AGA billed according to the contract rate of $75 per hour for 40-hour weeks working only on the HAVA contract from September 9, 2004, through December 30, 2006, AGA would have been paid only approximately $363,600 for its services. Had AGA billed only the net costs it incurred in the performance of its duties under the contract, it would have been paid only approximately $3,022,062. The total amount AGA should have billed the State of New Mexico for its services and costs is $3,385,661 rather than $5,886,144. Therefore, AGA was overpaid approximately $2,500,483.

17.     The Election Assistance Commission (EAC) is an independent bipartisan commission created by the U.S. Congress and established by the HAVA to assist the states regarding HAVA compliance and to distribute HAVA funds to the states. The EAC Commissioners are appointed by the President and confirmed by the U.S. Senate.

18.     In early 2007, the EAC began an audit of the use of federal HAVA funds by the NM SoS to ascertain how the HAVA funds had been spent. AGA's HAVA contract was the primary focus of the EAC's 2007-2008 audit.

19.     AGA could not provide documentation to the EAC auditors to support the approximately $5,886,144 it received in HAVA funds for the services AGA allegedly rendered to the State of New Mexico.

20.     During the EAC audit of 2007-2008, GUTIERREZ produced the following documents that were not in the files of the NM SoS, the DFA, or the NM Attorney General's Office (AGO):

A.     A purported original letter dated August 26, 2004, which was printed on

5

AGA letterhead and signed by both GUTIERREZ and by the former NM

SoS. Although bearing the signature of the then-NM SoS, no one else at

the NM SoS office, the NM AGO, or the DFA, reported knowing about

this letter.

1.    The August 26, 2004, letter purported to replace or modify the

original contract by replacing the agreed upon rate of $75 per hour

with a "flat rate of 17% for administrative costs associated with the

performance of our media services contract."

2.    The August 26, 2004, letter purported to replace or modify the

original contract to allow AGA to hire subcontractors on an as-

needed basis without written approval from the NM SoS.

3.    New Mexico law required the DFA to approve all modifications

to AGA's HAVA contract.  Unlike Amendments 1 and 2 of AGA's

HAVA contract, which were submitted to and approved by the

DFA, the DFA never received or approved the purported August

26, 2004, letter.

4.    The purported changes contained in the August 26, 2004, letter

would have transformed AGA's HAVA contract into a cost-plus-

percentage-of-cost contract, which is a type of contract that would

have been prohibited under the New Mexico Procurement Code.

5.    The purported August 26, 2004, letter would have substantively

changed the agreement with AGA from an hourly rate to a

percentage fee. A new RFP process would have been required before any substantive changes could have been made to the original contract.

B.    A binder containing approximately 187 AGA invoices sequentially numbered #106-289, which were dated September 10, 2004, through November 1, 2006, totaling approximately $1,137,000 that purported to represent expenses AGA paid to its media vendors. In fact, AGA never paid any vendors based on these invoices. Consequently, the EAC disallowed the 187 invoices in its audit calculations.

C.    An invoice purportedly from Univision to AGA for $300,000, which was dated January 31, 2006.

    1.    The invoice was provided to the EAC and to the IRS as a cost incurred by AGA.

    2.    AGA never paid this amount to Univision.

    3.    The EAC disallowed the invoice in its audit calculations.

D.    An invoice purportedly from KASA Fox 2 to AGA for $25,000, which was dated January 26, 2006.

    1.    The invoice was provided to the EAC and to the IRS as a cost incurred by AGA.

    2.    AGA never paid this amount to KASA.

    3.    The EAC disallowed the invoice in its audit calculations.

21.    During the EAC audit of 2007-2008, the former NM SoS produced the following document that was <u>not</u> in the files of the NM SoS, the DFA, or the NM AGO:

A purported original memorandum that was dated September 2, 2004, addressed to the former NM SoS, from GUTIERREZ, printed on AGA letterhead and signed by the former NM SoS. Other than the former NM SoS, no one else at the NM SoS office, the NM AGO, or the DFA reported knowing about this memorandum.

      A.     The purported September 2, 2004, memorandum stated that GUTIERREZ would "produce and direct all" of the advertising spots and negotiate and manage costs to keep them "within reason."

      B.     State law required the D.F.A to approve any modification of the HAVA contract for the modification to have been valid. The DFA never approved the purported September 2, 2004, memorandum that purported to modify AGA's HAVA contract.

22.    Even if AGA had been permitted to charge a "flat rate of 17% for administrative costs" under its contract, AGA still would have been overpaid at least $1,117,063.

23.    After the contract's termination date of December 30, 2006, AGA paid its last vendor bill on or about June 1, 2007, for work that had been completed in October 2006. This meant that AGA had no more outstanding bills to reduce AGA's overpayment of at least $1,117,063.

24.    The former NM SoS and GUTIERREZ effectively treated AGA's HAVA contract as a *de facto* prepayment contract. Therefore, all excessive monies or overpayments made to AGA were due and owing back to the NM SoS at the end of the contract as of December 30, 2006. GUTIERREZ never returned any such monies to the NM SoS.

25.     The EAC completed its audit with the issuance of its Final Audit Report on May 27, 2008. As a result of the audit, the EAC disallowed the State of New Mexico from being able to claim the approximately $6,271,810 in federal HAVA funds that had been paid to AGA as valid HAVA expenses.

26.     In response to Federal grand jury subpoenas that were issued subsequent to the EAC audit, the following documents were produced which were not in the files of the NM SoS, the DFA, or the NM AGO, nor had they been provided to the EAC, despite the EAC's repeated requests during its audit for AGA's documentation supporting the costs AGA charged on the HAVA contract:

> AGA produced nine (9) purported invoices from Kupfer Consulting (KC) to AGA dated from October 2004 through November 2006, as alleged support for nine (9) payments totaling approximately $746,375 that KC had received from AGA from October 2004 through November 2006.
>
>> A.     The KC invoices were addressed to AGA, "HAVA Project."
>>
>> B.     The last three KC invoices, which AGA paid on August 30, 2006, October 1, 2006, and November 10, 2006, totaling $236,605, were largely for a poll worker training video.  However, another subcontractor, not KC, produced that video and was paid approximately $75,000 by AGA.
>>
>> C.     The EAC was unaware that KC had performed any work for AGA under AGA's HAVA contract.

27.    On July 27, 2011, a federal grand jury indicted GUTIERREZ in *United States v. Armando G. Gutierrez, Joseph C. Kupfer, and Elizabeth D. Kupfer*, USDC D.N.M. Criminal No. 10-3383 WJ for violations of 18 U.S.C. §§ 371, 641, 1516, 1503, and 1957.

28.    A jury returned a guilty verdict against GUTIERREZ on January 31, 2013, for the violations of 18 U.S.C. §§ 371, 641, 1516, 1503, and 1957 (Counts 1, 2, 6-8, Doc. 485, 10CR3383).

29.    Beginning at least on or about August 20, 2004, and continuing through at least on or about July 1, 2011, in Bernalillo County, Santa Fe County, and Sandoval County, in the District of New Mexico, and elsewhere, GUTIERREZ and Joseph Kupfer (owner of KC) unlawfully, knowingly and willfully conspired to:

A.    defraud the United States, and any agency thereof in any manner and for any purpose, and;

B.    commit an offense against the United States,  to wit: to willfully and knowingly embezzle, steal, purloin and convert to their own use and the use of another, money and property of the United States, namely, federal HAVA funds administered by the NM SoS, in a value greater than $1,000.00, in violation of 18 U.S.C. § 641;

and one or more of such persons did any act to effect the object of the conspiracy, in violation of 18 U.S.C. § 371.

30.    On or about December 30, 2006, in Bernalillo County and Santa Fe County, in the District of New Mexico, and elsewhere, GUTIERREZ willfully and knowingly did steal, embezzle, purloin and knowingly convert to his use and the use of another money and property of the United States, namely, HAVA funds from the EAC, a department or agency of the United

States, in excess of what he had earned under the HAVA contract, in an amount the aggregate total of which exceeds $1,000.00, to which he knew he was not entitled, in violation of 18 U.S.C. § 641.

31.     On or about June 12, 2007, in Bernalillo County, in the District of New Mexico, and elsewhere, GUTIERREZ, with the intent to deceive or defraud the United States, endeavored to influence, obstruct, and impede a Federal auditor in the performance of official duties relating to a person, entity, and program receiving in excess of $100,000, directly and indirectly, from the United States in a one-year period under a contract, to wit:  provided to auditors with the EAC Office of Inspector General while auditing the federal HAVA funds disbursed to the NM SoS a binder of false, fictitious and fraudulent invoices in support of GUTIERREZ's receipt of HAVA funds, in violation of 18 U.S.C. § 1516.

32.     On or about July 1, 2011, in Bernalillo County, in the District of New Mexico, and elsewhere, GUTIERREZ did corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due administration of justice in a Federal grand jury in the District of New Mexico by providing in response to a Federal grand jury subpoena a chart entitled "AGA: SOS/HAVA INCOME/EXPENSES PRODUCTION," in violation of 18 U.S.C. § 1503.

33.     On or about July 30, 2007, in the District of New Mexico, and elsewhere, GUTIERREZ knowingly engaged and attempted to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, namely, transfer of $630,000 by wire to a title company, such funds having been derived from a specified unlawful activity, namely, Theft of Government Property, in violation of 18 U.S.C. § 1957.

34.     The Defendant Real Property was purchased with the $630,000 wire transfer of proceeds. The Superseding Indictment sought forfeiture of the real property. A Notice of Lis Pendens was recorded in Nueces County, Texas, on August 5, 2011.

35.     DORA GARCIA a/k/a DORA GUTIERREZ is the spouse of GUTIERREZ.

36.     The Defendant Real Property was purchased by GUTIERREZ and DORA GARCIA a/k/a DORA GUTIERREZ on or about July 31, 2007.

37.     The Tax Assessor of Nueces County, Texas, holds a tax lien on the Defendant Real Property.

38.     In *United States v. Gutierrez*, 10CR3383 WJ, following the January 31, 2013, guilty verdict, this Court entered a Preliminary Order of Forfeiture regarding the Defendant Real Property. (10CR3383 Doc. 553.) Dora Garcia a/k/a Dora Gutierrez filed a claim for the Defendant Real Property on July 25, 2013. (10CR3383 Doc. 589.) An Amended Judgment was entered against GUTIERREZ on September 3, 2013 (10CR3383 Doc. 624), and GUTIERREZ filed an appeal on September 4, 2013 (10CR3383 Doc. 625). On September 6, 2013, Dora Garcia a/k/a Dora Gutierrez filed an amended claim to the Defendant Real Property (10CR3383 Doc. 633).

39.     GUTIERREZ passed away on or about October 15, 2013. This Court entered an Order vacating his conviction and dismissing the indictment as to GUTIERREZ (10CR3383 Doc. 665).

### CLAIM FOR RELIEF

40.     The Defendant Real Property is subject to arrest and forfeiture to plaintiff under 18 U.S.C. § 981(a)(1)(C) because the Real Property constitutes or is derived from proceeds

traceable to a violation of an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense.

41.   The Defendant Real Property is subject to arrest and forfeiture to plaintiff under 18 U.S.C. § 981(a)(1)(A) because the Real Property was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or is property traceable to such property.

WHEREFORE: Plaintiff seeks arrest of Defendant Real Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of any Unknown Claimants to the Defendant Real Property, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

STEVEN C. YARBROUGH
Acting United States Attorney

STEPHEN R. KOTZ
CYNTHIA L. WEISMAN
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, NM  87103-0607
(505) 346-7274

**28 U.S.C. § 1746 DECLARATION**

I am a Special with the Internal Revenue Service who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 12/3/2013

Crystal Chavez, Special Agent
Internal Revenue Service
Criminal Investigation

14